NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————
                                              )
AMERICAN GENERAL LIFE                         )
INSURANCE COMPANY,                            )          Hon. Garrett E. Brown, Jr.
                                              )
            Plaintiff,                        )          Civil Action No. 08-74 (GEB)
                                              )
            v.                                )          **MEMORANDUM OPINION**
                                              )
MI JA JAE, JUNG WON HONG, JUNG MIN            )
KIM, JI HEE KIM, and YOUN SOON KIM            )
                                              )
            Defendants.                       )
———————————————————————)
                                              )
MI JA JAE,                                    )
                                              )
            Defendant, Counter-Cross and      )
            Third Party Plaintiff,            )
                                              )
            v.                                )
                                              )
AMERICAN GENERAL LIFE                         )
INSURANCE COMPANY,                            )
                                              )
            Counter-Defendant,                )
                                              )
            v.                                )
                                              )
JUNG WON HONG, JUNG MIN KIM,                  )
JI HEE KIM, and YOUN SOON KIM,                )
                                              )
            Cross-Defendants,                 )
                                              )
            v.                                )
                                              )
MICHAEL KO,                                   )
            Third-Party Defendant.            )
———————————————————————)

1

**BROWN**, Chief Judge:

This matter[1] comes before the Court upon the motion for summary judgment filed by Defendants Jung Won Hong and Jung Min Kim (Doc. No. 29), and the motion for summary judgment filed by Defendant Mi Ja Jae (Doc. No. 30).[2]  For the following reasons, this Court will grant Jung Won Hong and Jung Min Kim's motion and deny Mi Ja Jae's motion.

## I.    BACKGROUND

This matter arises out of competing claims to the benefits of a life insurance policy[3] issued by American General Life Insurance Company ("American General").  This policy provided decedent Seodong Kim ("Seodong") with $1.5 million in coverage at the time of his death.  (Compl. ¶ 14.)  On July 18, 2005, Seodong applied for the policy (Compl. ¶ 10), with the policy going into effect on November 18, 2005 (*id.* ¶ 13).  Seodong designated his then-fiancé Soon Youn Kim ("Youn") as the primary beneficiary, to receive 100% of the proceeds in the event of his death, and his sisters Jung Won Hong and Jung Min Kim, as contingent beneficiaries, each to receive 50% of the proceeds in the event that the proceeds could not go to the primary beneficiary.  (Compl. Ex. A at 13.)  In June 2005, amidst a dispute over the paternity of Youn's unborn child, Seodong and Youn ended their relationship, and Youn moved back to South Korea.  Subsequently, on October 8, 2005, Seodong married Mi Ja Jae in South Korea.  Thereafter the couple moved back to the United States where, on March 23, 2006, they married

---

[1]This matter was reassigned to the undersigned by Order of August 10, 2009.

[2]The Court will refer to each Defendant by name, because all three Defendants have filed cross and/or counterclaims and therefore the application of the label could create confusion.

[3]The policy at stake is Renewable Level Benefit Term Policy No. YME0344078.

under U.S. law. (Mi Ja Jae Certif. ¶ 31.)

In her Certification, Mi Ja Jae asserts the following version of events surrounding Seodong's death.  In the early morning hours of January 3, 2007, Mi Ja Jae discovered Seodong, lying dead on their kitchen floor, apparently having choked on a traditional Korean rice cake. (*Id.* ¶ 45.)  While police and emergency personnel were still in her residence tending to the deceased, Jung Won Hong,[4] Michael Ko, and an unknown third person arrived at the house.  (*Id.* ¶ 48.)  Ko introduced himself as Seodong's American General agent and stated that he needed to inspect Seodong's life insurance policies.  (*Id.* ¶ 49.)  Mi Ja Jae avers that Ko was scheduled to meet with Seodong later that day.  (*Id.* ¶ 45.)  Mi Ja Jae opened Seodong's safety box and discovered three life insurance policies.  (*Id.* ¶¶ 50-51.)  Two policies were issued by American General: the policy at issue before this Court, and another policy, in the sum of $1.5 million, benefitting Seodong's parents.  (*Id.* ¶¶ 53-54.)  It appears that the third policy was issued by Metropolitan Life Insurance Company in the amount of $1 million, with Mi Ja Jae designated as the beneficiary.  (*See* Jung Won Hong and Jung Min Kim's Resp. to Mi Ja Jae's Rule 56.1 Statement ¶ 7.)

Upon inspection of the American General life insurance policy at issue, it was discovered that the primary and contingent beneficiary designations on Seodong's copy of the life insurance policy had been holographically altered.  Youn's name was crossed out and substituted with Mi Ja Jae's name, and Ji Hee Kim, another of Seodong's sisters, was added as a contingent beneficiary.  (Compl. Ex. B at 21.)  Additionally, the original writing designating 50% of the

---

[4]In her Certification, Mi Ja Jae refers to "Jung Won Kim," which this Court presumes to be the same person as Jung Won Hong.

proceeds to each of the two sisters as contingent beneficiaries was crossed out and "16.7%" was written next to the name of each of the three sisters.  (*Id.*)  Furthermore, a diagram was discovered on the face page of the life insurance policy indicating that, in the event of Seodong's death, 50% of the proceeds was to go to Mi Ja Jae, and the remaining 50% was to go to Jung Won Hong, Jung Min Kim, and Ji Hee Kim.  (Mi Ja Jae Certif. ¶ 54; Ex. F.)  Mi Ja Jae maintains that Ko apologized to her for not amending the policy by substituting her name with Youn's name as the primary beneficiary on the life insurance policy, despite Seodong's alleged repeated requests by phone to Ko to do so.  (Mi Ja Jae Certif. ¶¶ 56-57.)

On January 18, 2007, defendants Mi Ja Jae, Jung Won Hong, and Jung Min Kim submitted opposing claimant's statements seeking payment of the policy's proceeds.  (Compl. ¶ 16.)  On January 4, 2008, American General filed this interpleader action pursuant to 28 U.S.C. § 1335.  On March 24, 2008, Jung Won Hong and Jung Min Kim filed an Answer to the Complaint.  On March 27, 2009, Mi Ja Jae filed an Answer to the Complaint, along with cross-claims against Jung Won Hong, Jung Min Kim, Ji Hee Kim, and Youn; a counter-claim against American General; and a third-party Complaint against Ko.

In accordance with the court's Order, service by publication was effected against Youn. Youn failed to respond to American General's Interpleader Complaint within the prescribed time, and the Clerk entered default against Youn on November 12, 2008.  Subsequently, after unsuccessfully trying to serve Youn personally for nearly a year, American General moved for default judgment on December 11, 2009, and on January 14, 2010, this Court entered final default judgment against Youn, permanently enjoining her from taking any future action to recover the life insurance policy benefits.  (Doc. No. 27.)

On February 22, 2010, Jung Won Hong and Jung Min Kim filed a motion for summary judgment, asking this Court to award them 100% of the policy proceeds.  On March 8, 2010, Mi Ja Jae filed a motion for summary judgment, asking this Court to award her 100% of the policy proceeds, or in the alternative, 50% of the proceeds.

## II.   ANALYSIS

### A.   Jurisdiction

As a threshold matter, the Court must address the issue of whether it has subject matter jurisdiction and personal jurisdiction over the parties.  *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986).  This matter is a statutory interpleader action brought under 28 U.S.C. § 1335.  This statute grants district courts original jurisdiction over any civil action of interpleader if there is minimal diversity between two or more adverse claimants, the amount in controversy is $500 or more, and if the plaintiff has deposited such money into the registry of the court.  28 U.S.C. § 1335(a).  This Court has subject matter jurisdiction because, according to the Complaint, the adverse claimants are from different states: Mi Ja Jae is a citizen of New Jersey, and Jung Won Hong and Jung Min Kim are citizens of New York.  Also, the amount in controversy is over $500, and American General has deposited the funds with the Court's Registry.  (Doc No. 34.)  Therefore, this Court has subject matter jurisdiction pursuant to § 1335(a).

Because 28 U.S.C. § 2361 authorizes nationwide service of process for statutory interpleader claims, this Court's exercise of personal jurisdiction is limited by the Due Process Clause of the Fifth Amendment, and this Court must ensure that Mi Ja Jae, Jung Won Hong, and Jung Min Kim have minimum contacts with the United States as a whole.  *See Max Daetwyler*

*Corp. v. R. Meyer*, 762 F.2d 290, 293 (3d Cir. 1985); *Mark E. Mitchell, Inc., v. Charleston Library Soc'y*, 114 F. Supp. 2d 259, 263-64 (S.D.N.Y. 2000); *see also Green v. William Mason & Co.*, 996 F. Supp. 394, 396-97 (D.N.J. 1998) (applying national contacts analysis under ERISA's nationwide service of process provision).  This Court has personal jurisdiction over Mi Ja Jae, Jung Won Hong, and Jung Min Kim because, as citizens and residents of the United States (Compl. ¶¶ 4-6), they have minimum contacts with the United States.  Having determined that each party was served in the United States, this Court may exercise personal jurisdiction, and will now turn to the merits of the parties' motions for summary judgment.

   B.   *Summary Judgment Standard*

   A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, this Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).  However, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue

6

for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him."  *Matsushita*, 475 U.S. at 586.

The parties do not dispute that this Court should apply New Jersey law as the law of the forum state.  Accordingly, this Court will apply New Jersey law in resolving Defendants' competing summary judgment motions.  *See, e.g., Am. Cyanamid v. Fermenta Animal Health Co.*, 54 F.3d 177, 180 (3d Cir. 1995).

  *C. Parties' Arguments*

The parties do not dispute that the only properly completed and filed life insurance policy form designated Youn as primary beneficiary, and Jung Won Hong and Jung Min Kim as contingent beneficiaries.  The life insurance policy states, in relevant part, that "[w]hile [the] policy is in force the owner may change the beneficiary or ownership by written notice to [American General]."  (Compl. Ex. B at 8.)  It is undisputed that Seodong did not comply with this rule because he did not send written notice to American General requesting a change to the beneficiary designation on this policy.  As noted, default judgment has been granted against the primary beneficiary, Youn.  Therefore, unless Mi Ja Jae prevails in her arguments, the original, unaltered life insurance policy form in American General's possession controls, and Jung Won Hong and Jung Min Kim as contingent beneficiaries shall each be entitled to 50% of the policy proceeds.

Mi Ja Jae argues that this Court should disregard the original, unaltered life insurance policy form and either (1) impose a constructive trust on the policy proceeds and, based on equity, award her 100% of the policy proceeds, or in the alternative, (2) find that Seodong substantially complied with American General's change of beneficiary rule, accept as valid the

7

changes made to Seodong's copy of the life insurance policy, and award Mi Ja Jae 50% of the

policy proceeds.  Based on the undisputed facts in this case, this Court rejects both of Mi Ja Jae's

theories as a matter of law.  Therefore, this Court will grant Jung Won Hong and Jung Min

Kim's motion for summary judgment, and deny Mi Ja Jae's motion for summary judgment.

>    D.    *Constructive Trust*

Mi Ja Jae first argues that she is entitled to all the proceeds of the life insurance policy

because Seodong intended to substitute her for Youn as the primary beneficiary on the life

insurance policy, and, therefore, principles of equity and unjust enrichment warrant the Court's

imposition of a constructive trust on the policy proceeds to establish Mi Ja Jae as the primary

beneficiary.

This Court will decline to impose a constructive trust.  Under New Jersey law, a

two-prong test is used to determine whether a constructive trust is warranted:

> First, a court must find that a party has committed "*a wrongful act*."
> *D'Ippolito v. Castoro*, 51 N.J. 584, 589 (1968).  The act, however,
> need not be fraudulent to result in a constructive trust; a mere mistake
> is sufficient for these purposes. [Dan B.] Dobbs, [Remedies] § 4.3, at
> 243 [(1973)] (observing that "constructive trust may be used as a
> remedy for innocent misstatements, or even simple mistakes, as well
> as a remedy for fraud").  Second, the wrongful act must result in a
> transfer or diversion of property that *unjustly enriches* the recipient."

*Flanigan v. Munson*, 175 N.J. 597, 608 (2003) (emphasis added).  The undisputed record here

reveals no evidence of mistake or fraud in the initial beneficiary designation.  Seodong initially

designated Youn as the primary beneficiary and Jung Won Hong and Jung Min Kim as the

contingent beneficiaries, and the record does not show that he made a mistake in this regard.

Furthermore, the fact that Seodong originally designated Jung Won Hong and Jung Min Kim as

contingent beneficiaries indicates that he recognized the possibility that Jung Won Hong and Jung Min Kim would collect the benefits under the policy and, indeed, that he wanted them to receive the policy proceeds.  Jung Won Hong and Jung Min Kim would not be unjustly enriched if they were to collect the proceeds of the policy.  Mi Ja Jae's claim in her certification that Ko apologized to her for neglecting to substitute Youn's name with her name is inadmissable, self-serving hearsay.  Even if Mi Ja Jae's unsupported assertion was not hearsay, Ko's alleged negligent failure to change the policy would be an insufficient basis on which to establish a constructive trust.

Mi Ja Jae points to the decision of the Supreme Court of New Jersey in *Vasconi v. Guardian Life Insurance Co.*, where the court held that because a divorcing couple mutually executed a written waiver of all claims or obligations arising out of their marital relationship, it would have been inequitable to award life insurance proceeds to the ex-wife simply because her ex-husband neglected to remove her from his life insurance policy.  124 N.J. 338, 339 (1991).  Although the ex-wife was clearly designated as the primary beneficiary on the life insurance policy, the court held that "the law is fully capable of effectuating marital distributions 'derived from notions of fairness, common decency, and good faith'" and disregarded the policy as inconsistent with the husband's intent.  *Id.* at 348 (quoting *Carr v. Carr*, 120 N.J. 336, 349 (1990)).

*Vasconi* is clearly distinguishable here.  In *Vasconi*, the ex-wife essentially signed a contract disclaiming any rights to the ex-husband's property.  Consequently, the Supreme Court of New Jersey held that principles of equity obligated the court to disregard the beneficiary designation on the life insurance policy and prevent the money from going to the ex-wife.  124

9

N.J. at 341, 347.  Here, however, the record does not show that Seodong and Youn executed any written agreement disclaiming all of Youn's rights to Seodong's property.  Mi Ja Jae requests that this Court designate her as the primary beneficiary purely based on equity and her assertion of Seodong's intent.  Such a result would go beyond the *Vasconi* court's holding by rewriting a contract without substantial, undisputed evidence demonstrating that the insured intended something different than that which was written in the policy.  Furthermore, as discussed below, the evidence of Seodong's intent in the record is unclear and contradictory.

Mi Ja Jae also relies on an opinion of the Appellate Division where the court, stating that "[a] statute should not be construed so as to defeat its intended and evident purpose," broadly interpreted a New Jersey statute requiring an individual who intentionally kills someone to forfeit all rights with respect to the decedent's estate.  *Bennet v. Allstate Ins. Co.*, 317 N.J. Super. 324, 329 (App. Div. 1998).  Reasoning that the statute was clearly designed to prevent an intentional killer from even indirectly benefitting from his wrongful act, the court not only prevented a man who killed his wife from acquiring the proceeds of her life insurance policy, but also prevented the killer's mother from acquiring the policy proceeds as well, notwithstanding her designation as the contingent beneficiary.  *Id.* at 329-30.  The court concluded that the legislature surely intended that the victim's children, to whom both parents owed a duty of support, would receive the benefits rather than allowing the proceeds to go to the killer's mother who "by gift, devise or intestacy would have the power to place all or part of those funds back in his hands."  *Id.*  Thus, the court disregarded the designation of the mother as the contingent beneficiary and awarded the policy proceeds to the decedent's children.  *Id.* at 331.  Mi Ja Jae argues that equity similarly compels this Court to substitute Youn with Mi Ja Jae on the life insurance policy and award Mi

Ja Jae 100% of the policy proceeds.

*Bennet*, however, is also distinguishable from this case.  In *Bennet*, the court engaged in statutory interpretation based on legislative intent, while here Mi Ja Jae has presented no statutory authority suggesting that the life insurance policy proceeds should go to her and not Jung Won Hong and Jung Min Kim.  Furthermore, the equitable considerations before the court in *Bennet*, chiefly the existence of dependent minor children of the victim requiring monetary support, are not applicable here because Mi Ja Jae is an adult.

For these reasons, this Court rejects Mi Ja Jae's request to impose a constructive trust on the proceeds of the life insurance policy.

　　　　E.　　*Substantial Compliance*

In the alternative, Mi Ja Jae argues that she is entitled to 50% of the policy proceeds, as indicated by the notation on Seodong's copy of the policy's beneficiary page, because Seodong substantially complied with American General's rule for changing a beneficiary designation.  Mi Ja Jae contends that the holographic changes made to Seodong's copy of the life insurance policy, coupled with the diagram on the face page of the policy stipulating that 50% of the proceeds should go to Mi Ja Jae and the remaining 50% of the proceeds should go to Jung Won Hong, Jung Min Kim, and Ji Hee Kim, constitute valid changes to the policy because they substantially comply with American General's change-of-policy rule.

In determining whether a party has substantially complied with the rules governing changes of beneficiaries, courts do not look to the presumed intent of the insured.  Substantial compliance applies only "where [a person] is able to convince the court that he has done everything within his power to effect a change, and made every reasonable effort to comply with

11

the conditions of a change of beneficiary." *Prudential Ins. Co. of Am. v. Douglas*, 110 F. Supp. 292, 294 (D.N.J. 1953).  Courts narrowly apply this doctrine, because, under a broad application, any assertion of minimum compliance would be sufficient to alter a contract.  This would essentially render traditional contracts meaningless by giving a court the power to rewrite any contract as it sees fit.  Consequently, the beneficiary designation on a life insurance policy cannot be deemed changed under substantial compliance unless the court is convinced that the insured made every reasonable effort to effect a change of beneficiary in compliance with the method provided in the contract.  *Garvin v. A.B.*, No. 04-805, 2006 WL 2830966, at *5 (D.N.J. Sept. 29, 2006).  Courts have therefore rejected vague or merely oral expressions of an intent to change beneficiaries as insufficient evidence of substantial compliance.  *Id.* (citing *Czoch v. Freeman*, 317 N.J. Super. 273, 286 (App. Div. 1999)); *see also DeCeglia v. Estate of Colletti*, 265 N.J. Super. 128, 134-35 (App. Div. 1993).

In this case, the undisputed record demonstrates that Seodong did not do everything within his power to effect a change of beneficiaries.  Although Seodong married Mi Ja Jae on October 8, 2005, and therefore had more than a year until his death on January 3, 2007, to amend his life insurance policy, he neglected to do so.  Although Mi Ja Jae maintains that Seodong was scheduled to meet with Ko later that day, Seodong did not file any written policy change request with American General, either by an official form, informal letter, or otherwise.  Similarly, the fact that Seodong designated Mi Ja Jae as the beneficiary on a different life insurance policy indicates that Seodong knew how to properly designate her as a beneficiary on a life insurance policy.  As discussed above, Mi Ja Jae's claim that Ko apologized to her for neglecting to substitute Youn's name with her name is inadmissible, self-serving hearsay.  Accordingly, this

12

Court finds that Seodong did not take all reasonable steps to change the policy beneficiaries.

Furthermore, this Court cannot determine the "amended" policy beneficiaries and their designated shares as purportedly effectuated by Seodong's asserted substantial compliance because the two documents containing Seodong's handwritten changes are internally inconsistent. The altered form contains a 100% designation to Seodong's "fiancé," a 50% designation to one of Seodong's sisters, and a 16.7% designation to all three of Seodong's sisters. These numbers do not correspond to the numbers diagramed, presumably by Seodong, on the face page of the policy. The diagram designates 50% of the proceeds to go to Mi Ja Jae and 50% of the proceeds to go to Jung Min Kim, Jung Won Hong, and Ji Hee Kim. Additionally, although Youn's name was crossed out and substituted with Mi Ja Jae's name, the designation of 100% of the proceeds to Seodong's "fiancé" was not crossed out. Therefore, this Court cannot deduce who is entitled to the policy proceeds under Seodong's purported attempt to amend the policy. The inability to determine the nature of the change Seodong allegedly attempted strongly indicates that Seodong did not substantially comply with American General's rules for change of policy. Indeed, American General's rule requiring written notice to it of any change seems designed to avoid precisely the dilemma presented in this case.

Based on the undisputed record, this Court concludes that Seodong did not substantially comply with American General's rules for changing beneficiaries. Therefore, the policy and its initial beneficiary designations remain unaltered. Default judgment has been granted against Youn, the primary beneficiary, for failure to appear. Therefore, the primary beneficiary cannot recover. As the valid contingent beneficiaries, Jung Won Hong and Jung Min Kim shall recover 50% each of the policy proceeds. Mi Ja Jae is not entitled to any of the policy proceeds. This

13

Court will order American General to submit, within seven days of receipt of the accompanying Order, a proposed order for distribution of the funds deposited in the Court's Registry and for any other relief it may seek.

**III.    CONCLUSION**

For the foregoing reasons, this Court will grant Jung Won Hong and Jung Min Kim's motion for summary judgment on their claims.  This Court will deny Mi Ja Jae's motion for summary judgment and dismiss her cross-claim.[5]  This Court will order American General to submit, within seven days of receipt of the accompanying Order, a proposed order for distribution of the funds deposited in the Court's Registry and for any other relief it may seek. An appropriate form of Order accompanies this Memorandum Opinion.

Dated: July 28, 2010

        S/Garrett E. Brown, Jr.
        Garrett E. Brown, Jr., Chief Judge
        United States District Court

---

[5] No party appears to have moved for summary judgment with regard to Mi Ja Jae's Third-Party Complaint against Ko.  Mi Ja Jae's claim against Ko appears to remain pending.

14